IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KYLEE M. METZGER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 5:18-cv-6060 |
| ) | |
| BOARD OF REGENTS OF THE ) | |
| NORTHWEST MISSOURI STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Board of Regents of the Northwest Missouri State University (the "University") hereby gives notice of the removal of the case styled *Metzger v. Board of Regents of the Northwest Missouri State University*, No. 18ND-CC00030 (Circuit Court of Nodaway County, Missouri), to the United States District Court for the Western District of Missouri, Western Division. The University states the following grounds for removal:

1. On February 21, 2018, Kylee M. Metzger ("Plaintiff") commenced this action in the Circuit Court of Nodaway County, Missouri by filing her Petition.

2. Plaintiff served a copy of her Petition on the University on March 29, 2018.

3. There are no co-defendants whose consent is required for removal.

4. Plaintiff's Petition consists of three counts: Count I alleges discrimination based on disability; Count II alleges false imprisonment; and Count III alleges substantive and procedural due process violations.

5. In Count I, Plaintiff invokes the Americans with Disabilities Act ("ADA") by stating that the University "has contracted to comply with the ADA as a condition precedent for receiving certain federal funds from the Government of the United States." Pet. ¶ 8.

6. Further, Plaintiff alleges that she is entitled to a "free appropriate public education." The entire concept of a "free appropriate public education" is created by, and grounded in, the federal Individuals with Disabilities Education Act ("IDEA"). *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017).

7. Therefore, Plaintiff's claim for disability discrimination arises under federal law and contains substantial federal questions necessary for its resolution.

8. In Count III, Plaintiff asserts violations of her procedural and substantive due process rights, thereby invoking the Fifth and Fourteenth Amendments of the United States Constitution.

9. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's remaining claims because they form part of the same case or controversy as her claims invoking federal law.

11. Because of this Court's original jurisdiction over Plaintiff's first and third counts, removal of this action is proper pursuant to 28 U.S.C. § 1441(a) and (c).

12. This Court may exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1441(c).

13. The filing of this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is within thirty (30) days of receipt by the University, through service or otherwise, of a copy of the initial pleading setting forth the claims for relief upon which this action is based.

14. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon the University in this action are attached hereto. Plaintiff has not served, and the University has not received, any other process, pleadings or orders.

15. After the filing of this Notice of Removal, the University will file a copy of this Notice with the Clerk of the Circuit Court of Nodaway County, Missouri, and will provide notice to Plaintiff, all as provided by 28 U.S.C. § 1446(d).

WHEREFORE, the University states that it has divested the state court of jurisdiction by filing with that Court a Notice of Filing this Notice of Removal, and requests that this Court proceed with adjudication of this matter.

Dated this 27th day of April, 2018.                Respectfully submitted,

/s/ Derek T. Teeter

DEREK T. TEETER            MO# 59031
MICHAEL T. RAUPP           MO# 65121
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Board of Regents of the Northwest Missouri State University*

# CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, a true and correct copy of the foregoing was served via United States mail, postage prepaid, upon:

Brian J. Klopfenstein
215 S. Platte Clay Way, Suite B
Post Office Box 897
Kearney, MO  64060-0897
Telephone  (816) 628-2800
Facsimile  (816) 628-2802

*Attorney for Plaintiff*

and I also filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Derek T. Teeter
*Attorney for Defendant*



# IN THE 4TH JUDICIAL CIRCUIT COURT, NODAWAY COUNTY, MISSOURI

| Judge or Division:<br>ROGER M PROKES | Case Number: 18ND-CC00030 |
|---|---|
| Plaintiff/Petitioner:<br>KYLEE METZGER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN J. KLOPFENSTEIN<br>305 PLATTE CLAY WAY STE C<br>PO BOX 897<br>KEARNEY, MO 64060-0897 |
| Defendant/Respondent:<br>BOARD OF REGENTS OF NW MISSOURI STATE UNIV. | Court Address:<br>305 NORTH MAIN<br>MARYVILLE, MO 64468 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: BOARD OF REGENTS OF NW MISSOURI STATE UNIV.
Serve: Dr. John Jasinski
800 UNIVERSITY DRIVE
MARYVILLE, MO 64468

*COURT SEAL OF NODAWAY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

2/22/18 _____
Date                            Clerk

Further Information:

### Sheriff's or Server's Return
Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____        _____
                         Date                Notary Public

**Sheriff's Fees**
Summons              $_____
Non Est              $_____
Sheriff's Deputy Salary
Supplemental Surcharge  $  10.00
Mileage              $_____ (____ miles @ $____ per mile)
Total                $_____

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (SMCC) For Court Use Only: Document Id # 18-SMCC-36    1 of 1    Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 5:18-cv-06060-BCW   Document 1   Filed 04/27/18   Page 5 of 17

IN THE CIRCUIT COURT OF NODAWAY COUNTY, MISSOURI
4TH JUDICIAL CIRCUIT
AT MARYVILLE

| | |
|---|---|
| KYLEE M. METZGER,<br>16301 E. 38th Street South<br>Independence, MO 64055<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE<br>NORTHWEST MISSOURI STATE<br>UNIVERSITY<br>800 University Drive,<br>Maryville, MO 64468-6001<br>Serve: Dr. John Jasinski<br>      President<br>      Northwest Missouri State Univ.<br>      800 University Drive<br>      Maryville, MO 64468<br>BOARD MEMBERS INCLUDE<br>Dr. Pat Harr, Dr. Marilou Joyner,<br>Jason Klint, John Richmond,<br>Richard Smith, George Speckman, and<br>Roxanna Swaney<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CAUSE OF ACTION FOR DISCRIMINATION IN THE SCHOOL
## ALLEGATIONS COMMON TO ALL COUNTS

COME NOW Kylee M. Metzger, a school student formerly attending Northwest Missouri State University, by and through her attorney of record, Brian J. Klopfenstein, and for her cause of action state and allege as follows:

1.    Plaintiff Kylee M. Metzger is a school student who formerly attended the Defendant Northwest Missouri State University during the current academic school year of 2015-2016. Plaintiff is over the age of 18 years old.

1

2. Plaintiff Kylee M. Metzger resides with her grandparents John and Kay Metzger, at the address listed above in Independence, Jackson County, Missouri. For all times relevant to this cause of action, Plaintiff has resided at that location

3. Plaintiff is a student in need of accommodation and protection and is protected by Chapter 213 RSMO and MHRA Section 213.055.(1)(a) and (b) RSMo 2004. Additionally, as a child with a disability, the Plaintiff is entitled to a free appropriate public education including related aids and services necessary for them to access that education.

4. Plaintiff is a student with a 504 Plan because of her diagnosis of Type I diabetes. Plaintiff has had a 504 Plan for several years while attending high school. Plaintiff Metzger originally attended Independence School District, along with other schools where she attended school with a 504 Plan. Plaintiff had a 504 Plan since elementary school and was able to successfully complete her education. As a result, Plaintiff is an individual with a "disability" within the meaning of Chapter 213 RSMo.

5. Plaintiff graduated from Truman High School in the Independence School District in May, 2015. Plaintiff elected to go to Defendant Northwest Missouri State University in the Fall semester, 2015. Plaintiff was accepted to Defendant Northwest Missouri State on February 20, 2015, in a letter addressed to her from the Associate Director of Admissions, Tamera Grow.

6. Defendant is a public university that takes federal grants, funds, and assistance. It is allowed to enroll students from the State of Missouri. Defendant can be served by serving the current president of the institution. Defendant is also a "person" within the meaning of Chapter 213.010 RSMo.

2

7. Defendant Northwest Missouri State University is engaged in an "industry affecting commerce: within the meaning of Chapter 213 RSMo. And can be served by serving the current members of the Board of Regents identified above.

8. Defendant has contracted to comply with the ADA as a condition precedent for receiving certain federal funds from the Government of the United States.

9. Plaintiff was placed in a Assist Program by the Defendant because of a need to benefit from "study and test skill support." This represented the first time that Plaintiff would leave her family for a significant time. Plaintiff signed the Assist Program Participation Agreement on June 9, 2015 and it was received at the school on June 12, 2015. The Program required Plaintiff to commit to attending certain classes; and gave the Defendant access to educational records. Plaintiff's full participation in the program was required; or the Defendant reserved the right to deny enrollment in future trimesters at Defendant Northwest.

10. Plaintiff's first semester included classes of General Biology, University Seminar, Academic Success Coaching, Math Skills, and General Psychology totaling 10 credit hours of study.

11. Plaintiff was diagnosed with Chronic Type I diabetes at approximately age 7. Sometime after being diagnosed with diabetes, when Plaintiff was approximately 11 years old, she was then told that she suffered the condition of "dawn phenomenon" as a complicating factor for her diabetes. She was again diagnosed with that condition when she was 17. Plaintiff went to Children's Mercy Hospital extensively to deal with the complications of her diabetes. Throughout her time with the doctors at Children's Mercy Hospital, Plaintiff remained compliant as they worked to reduce the complications.

12. Plaintiff graduates from High School in May 2015. Prior to graduation, you applied to and were accepted by the Defendant as the university she wished to attend. At the time of her application, Plaintiff met all the educational requirements. While her GPA was quite high, Plaintiff's stress level was frequently elevated, inhibiting her ability to take the standardized test; Plaintiff essentially needed to take the standardized test several times.

13. Plaintiff learned that she was officially enrolled in school in March 2015. Plaintiff learned that she was enrolled in the school prior to her high school graduation.

14. Shortly after beginning her college experience, Plaintiff experienced problems with her diabetes. Plaintiff was admitted to St. Francis Hospital on several different occasions during the Fall Semester in Maryville, MO. Plaintiff was admitted to St. Francis Hospital on September 17, 2015 with a blood sugar level of 744; on September 21, 2015 with a blood sugar level of 948; on October 5, 2015 she was treated for a blood sugar level of 521 and released; and admitted on November 19, 2015 with a blood sugar level of 759.

15. On November 18, 2015, Plaintiff was purportedly in a conversation with Judy Frueh, NP about the need to go to the ER to get her blood sugars down. The NP also told the Plaintiff that they were worried about her answering her telephone and going to the hospital; not utilizing the resources provided (counseling with Frueh, dietician, NP and MD services). According to the notes, Plaintiff indicated that she was eating "cheese nips, cereal, and chicken salad."

16. On November 19, 2015, the RN diabetic educator at St. Francis Hospital spoke with the School about a meeting to discuss helping Plaintiff. While Plaintiff was in the hospital, that day, she indicated to the director, Deb Hull, that she wanted to continue working on her school work rather than meeting.

4

17. On December 2, 2015 Plaintiff met with Dr. Wilmes, Debra Hull, Kendra Quick and others to discuss her progress. According to the notes, Deb Hull proposed a contract with specific action items. During the discussion that day, Plaintiff inquired about being excused from classes due to her illness and hospitalization. As a result of the meeting, Plaintiff agreed to meet with the dietician on December 4, 2015; to meet with the clinic supervisor about blood sugar readings through December 17, 2015; and to meet with the clinic supervisor on December 17th.

18. On December 4, 2015, Plaintiff did not make the meeting with the dietician as scheduled; however, she did speak with the dietician at approximately 5:00 that evening. She reported that her blood sugars were 360 and 402. Plaintiff told the dietician that her blood sugar was 238 during the call. Plaintiff reported her carb intake which was not as suggested. The Wellness Clinic sent an e-mail to Plaintiff warning her about the consequences of NOT following the agreement/contract.

19. According to the Defendant, Plaintiff cancelled her appointment for December 17th the day before indicating that she had already left campus to go home. Further Plaintiff told the school that she was going to see her own doctor when she was at home.

20. On January 4, 2016, an employee of the Defendant through the Wellness Center sent an e-mail indicating that they wanted to meet with her on January 12, 2016 when she returned to school. They also reported that she had not sent blood sugar readings as contractually required through the Christmas break.

21. According to the Defendant, Plaintiff did meet with the Wellness Center representative on January 12, 2016 where she brought in blood sugar readings. Plaintiff also met with the school on January 26, 2016 and produced some blood sugar readings; however those

5

readings were not written out. The person viewing the readings indicated that she saw a reading of 600 in one of the numbers that was made available.

22. Throughout the entire time between January 26, 2016 and when Plaintiff was removed from the school on February 18, 2016, Plaintiff was the recipient of constant hassling and contact from the Defendant University. Those contacts included:

A. On February 14, 2016, Plaintiff was hospitalized in DKA through the night on Wednesday evening. At that time, according to the notes, Plaintiff was worried about getting kicked out of the school. She indicated the pump malfunctioned; and that she had been giving herself insulin shots. The notes from Frueh indicate that Frueh believed there were conflicting stories. In a note at the bottom of the entry, Dr. Wilmes indicated "increasing concern about her ability to manage her DM effectively, and/or possibly intentionally not managing well."

B. There was a concern about Plaintiff not being truthful with Judy Frueh on February 15, 2016. Frueh even suggested that Plaintiff may have an eating disorder at that time

C. On February 17, 2016, the notes indicate that Plaintiff complained about being stressed out because her ex-boyfriend was cheating on her;

D. On February 18, 2016, the school learned about problems of Plaintiff getting insulin because of insurance not paying for it;

E. On February 18, 2016, in a meeting with Dr. Wilmes, Judy Frueh, and Kori Hoffman the group voiced concerns regarding her health and not managing her blood sugars. They complained that she was not turning in all her readings; that she was not consistently eating; and that she violated the contract by not logging in insulin injections.

F. The Defendant university also kept telling Plaintiff that her inability to succeed at their college may prevent her from attending another school.

6

Case 5:18-cv-06060-BCW   Document 1   Filed 04/27/18   Page 11 of 17

23. Plaintiff was subjected to discipline because of her disability and she alleges the discipline was a violation of procedural due process and substantive due process.

## COUNT I DISCRIMINATION BASED ON DISABILITY

Come now all the Plaintiffs and for their cause of action under Count I state and allege as follows:

24. Plaintiffs reallege and restate all of the allegations contained in Paragraphs 1 through 16 as if stated in Count I.

25. Plaintiff alleges that she was singled out for treatment because of her diabetes with such demands and conditions that literally made her school experience even more stressful. She was required to sign different contracts for certain conduct. Attached as Exhibit A is a copy of the Care and Concern Contract which was signed on December 5, 2015.

26. Within a matter of 2 days, the Defendant school, acting through its agents, employees, independent contractors or others began threatening Plaintiff about not abiding by her contractual obligations.

27. Plaintiff suggests that with every possible illness or situation, the Defendant University threatened Plaintiff with breaching the contract. Plaintiff was even written up because she suspected her ex-boyfriend was cheating on her.

28. Plaintiff was directed to make certain appointments, visits, and meetings with different individuals on campus. In addition, she was constantly ordered to attend different meetings. She was threatened by the School that if she did not go to the hospital, she would violate her contract.

29. Additionally, when Plaintiff did go to the hospital, the fact that she went to the hospital was used against her because she did not keep up with her school records; her school

7

assignments, or other obligations on campus. Additionally, Plaintiff was even told that she had to contact another school official to seek extensions of time to do her school work.

30. Defendant has acted in a manner to cause Plaintiff and her family the most possible difficulty. The district has acted in bad faith in dealing with Plaintiff.

31. Plaintiff suffered extreme emotional harm because of the conduct of the school. She suffered medical complications, emotional problems and other related difficulties that have interfered with her ability to enjoy her life. She has difficulty sleeping; continued nightmares, and increased levels of stress which has made her seriously question her ability to succeed in any chosen profession. As a direct and proximate result of the conduct of the University, Plaintiff sustained damage.

WHEREFORE Plaintiffs pray judgment against the Defendant under Count I in an amount which is fair and reasonable; for costs; for interest as allowed by law; and for such other and further relief as this Court and jury deems just and proper. Further Plaintiff prays for an award of attorney fees and other such damages. Plaintiff further prays this Court order the district to pay the costs and expenses. Plaintiffs pray for such other and further relief as the Court believes is fair, just and proper.

## COUNT II
## (FALSE IMPRISONMENT)

Come now all the Plaintiffs and for their cause of action under Count II state and allege as follows:

32. Plaintiffs reallege and restate all of the allegations contained in Paragraphs 1 through 23. Additionally, Plaintiff alleges all of the allegations contained in Count I of the Petition as if fully set out in Count II.

8

33. When Plaintiff was informed on February 18, 2016 that she was discharged from the University, she was informed by the team, that she had until midnight to leave campus. Someone at the meeting made the decision to place an armed security officer with Plaintiff so that she couldn't run. Because she went three doors down, Plaintiff was labeled a runaway.

34. Plaintiff was escorted back to her dorm room by an armed security officer. On the way to her room, Plaintiff was taken to a secret entrance by security with him keeping his hand on Plaintiff's body. Plaintiff believes she was escorted through this secret entrance so as to minimize her ability to speak with other students. The officer told her that she needed to pack up her belongings so that she could leave by midnight. The armed security officer remained at the dorm with her such that she was prevented from speaking with any friends on the hall.

35. Plaintiff was treated as if she were a criminal, terrorist, or other dangerous individual. As a matter of fact, while being detained, Plaintiff believes a fight may have occurred on the first floor of the dorm where other security may have come. Throughout the evening there were a total of 2 dorm directors and 3-4 armed security officers who came to floor to assure that Plaintiff would leave the University.

36. Plaintiff was prevented from leaving the dorm and felt as if her movement was substantially restricted. The Plaintiff remained under the watchful eye of the armed security officer form approximately 5 hours. When Plaintiff requested to use the bathroom, she had to get special permission to use the facility.

37. As a result of the conduct of the Defendant University, the Plaintiff suffered additional emotional distress. As a direct and proximate cause of the conduct of Defendant, Plaintiff suffered damages.

WHEREFORE Plaintiffs pray judgment against the Defendant under Count II in an amount which is fair and reasonable, in excess of $75,000.00; for costs; for interest as allowed by law; and for such other and further relief as this Court and jury deems just and proper. Further Plaintiff prays for an award of attorney fees and other such damages. Plaintiff further prays this Court order the district to pay the costs and expenses. Plaintiffs pray for such other and further relief as the Court believes is fair, just and proper.

## COUNT III—SUBSTANTIVE DUE PROCESS AND PROCEDURAL DUE PROCESS VIOLATIONS

38. Plaintiff incorporates all other paragraphs by reference as if fully set forth herein.

39. Defendant's employment conduct violated Plaintiff substantive and procedural due process rights.

40. Defendant knew or should have known of violations of Plaintiff's rights as alleged above and Defendant failed to implement prompt and appropriate corrective action.

41. Plaintiff was damaged by the above mentioned rights violations and is entitled to all remedies available to her, including but not limited to damages for loss of income, embarrassment, humiliation, emotional distress, damage to her reputation, and other damages as yet undetermined, and Plaintiff is reasonable expected to suffer from such damage in the future.

42. Defendant's conduct was intentional with malice and or reckless disregard of Plaintiff's known rights.

43. Defendant's conduct was outrageous because of Defendant's evil motive or reckless indifference to the rights of Plaintiff thereby entitling Plaintiff to Punitive damages in an amount that will punish Defendant and will deter Defendant and others fro like conduct.

WHEREFORE, Plaintiff requests that the Court assume jurisdiction of this action and grant him judgment against Defendant in an amount that is fair and reasonable, for punitive

10

damages, for his costs and attorney fees, and for such other relief as the Court deems just and proper.

REQUEST FOR JURY

COMES NOW the Plaintiff and hereby requests a trial by jury.

Respectfully Submitted,

/s/ Brian J. Klopfenstein
BRIAN J. KLOPFENSTEIN #33722
215 S. Platte Clay Way, Suite B
Post Office Box 897
Kearney, MO 64060-0897
(816) 628-2800
(816) 628-2802 (FAX)
ATTORNEY FOR PLAINTIFFS

State of Missouri    )
                     ) ss
County of Clay       )

I, Kylee M. Metzger, have read the foregoing Petition for Damages and do hereby state that the contents are true, accurate, and correct to the best of my knowledge, information and belief.

_____
KYLEE M. METZGER

Subscribed and sworn to before me, the undersigned Notary Public, this _____ day of February, 2018.

_____
NOTARY PUBLIC

My Commission Expires:

11

damages, for his costs and attorney fees, and for such other relief as the Court deems just and proper.

REQUEST FOR JURY

COMES NOW the Plaintiff and hereby requests a trial by jury.

Respectfully Submitted,

BRIAN J. KLOPFENSTEIN #33722
215 S. Platte Clay Way, Suite B
Post Office Box 897
Kearney, MO 64060-0897
(816) 628-2800
(816) 628-2802 (FAX)
ATTORNEY FOR PLAINTIFFS

State of Missouri   )
                    ) ss
County of Clay      )

I, Kylee M. Metzger, have read the foregoing Petition for Damages and do hereby state that the contents are true, accurate, and correct to the best of my knowledge, information and belief.

KYLEE M. METZGER

Subscribed and sworn to before me, the undersigned Notary Public, this 20th day of February, 2018.

NOTARY PUBLIC

My Commission Expires:

Brian Jay Klopfenstein
Notary Public Notary Seal
State of Missouri County of Clay
My Commission Expires 04/02/2021
Commission # 00499208

11